(March 12, 1985)

■ In the Matter of WORLDWIDE MANAGEMENT CONSULTANTS, INC., Respondent-Appellant; WATERFRONT COMMISSION OF NEW YORK HARBOR, Appellant-Respondent. — Order, Supreme Court, New York County (Edward J. Greenfield, J.), entered September 14, 1984, granting the application of Worldwide Management Consultants, Inc. (Worldwide) to quash or modify a subpoena issued by the Waterfront Commission of New York Harbor (Commission) to the extent of limiting the scope of the subpoena, unanimously reversed, on the law and the facts and in the exercise of discretion, to deny the motion in its entirety, without costs.

The Commission, a public agency duly constituted by the Waterfront Commission Compact enacted by the States of New York and New Jersey (McKinney's Uncons Laws of NY § 9801 et seq., L 1953, ch 882; NJ L 1953, ch 202; NJ Stats Ann § 32:23-1 et seq.) and approved by Congress (Pub L 252, ch 407 [83rd Cong, 1st Sess]), was created for the purpose of eliminating racketeering on the waterfront of the Port of New York. To this end the Compact, among other things, requires the registration of longshoremen (McKinney's Uncons Laws of NY § 9827; NJ Stats Ann § 32:23-27) and the licensing of stevedore companies (McKinney's Uncons Laws of NY § 9819; NJ Stats Ann § 32:23-19).

Worldwide is a Delaware corporation which maintains its principal place of business in Baltimore, Maryland. It provides a variety of clients with extensive services, including marketing assistance, computer operations and customer services. It is not

a licensee of the Commission. It maintains local offices in a variety of places, including Newark and Elizabeth, New Jersey, and Brooklyn, New York.

On June 19, 1984 the Commission issued a subpoena duces tecum to Worldwide seeking Worldwide's corporate records and documents for the 2½-year period from January 1, 1981 to June 30, 1983. On this appeal we are concerned only with items 1 through 12 of the subpoena, as follows:

"1. Minute book

"2. Certificate of Incorporation

"3. Stock Certificate book

"4. General Ledger

"5. General Journal

"6. Cash Receipts

"7. Cash Disbursements

"8. Voucher Register (invoice register or purchase journal)

"9. Sales Register or Invoice Register

"10. Accounts Receivable Register

"11. Payroll Register

"12. Individual Earning Cards or W-2's".

Special Term limited the subpoena to the documents required by item 13 of the subpoena and "any other record or document pertaining to *transactions* with any person or entity connected with the waterfront of the Port of New York and New Jersey, but not limited to persons or entities licensed by Respondent." (Emphasis supplied.)

Nearly half of Worldwide's gross billings during the period involved resulted from business dealings with firms or individuals licensed or registered by the Commission. For the years 1981-1982, six of the stevedores allegedly made payments to Worldwide in the amount of $958,154.61. Various invoices from Worldwide to licensed companies indicate charges for such items as "Management fees", "Retainer" and "Additional Services Rendered". The investigation also indicated that although Worldwide purports to assist licensed companies with their marketing plans, at least one company actively solicits accounts for itself, despite the fact that it apparently paid Worldwide some $426,208.26. An alleged payment of $260,000 by that same company to Worldwide indicated the possibility of a device to avoid payment of taxes. Moreover, the written proof of the services performed by Worldwide for the various licensed stevedores was sparse and questionable.

The Commission concluded that there was a possibility that Worldwide was nothing more than an alter ego of various licensed stevedores established by these companies and persons associated with them, created and maintained to thwart the Commission's investigation. The various licensed stevedores involved had close and intertwined relationships with each other in terms of stock ownership or control. The record also established that many of these companies had offices in the same place as Worldwide and shared offices with each other. Thus, Worldwide shares its Newark address with five licensed stevedores and shares its Brooklyn address with six licensed stevedores, four of whom are among the five also listed at the Newark address.

Correspondence in the possession of the Commission plainly indicates a close affiliation between Worldwide and the licensed stevedores; and that 10 or 11 individuals associated with Worldwide receive salaries or other income from various licensed stevedores. It is apparent that these persons associated with Worldwide have or had stock interests in licensed stevedores or in a company which has interests in the Commission's licensed stevedores. They have received payments of various sorts from the Commission's licensed stevedores, and share interests in the Commission's licensed companies as well as in some nonregulated companies.

In order that the Commission may properly monitor licensed stevedores, the latter are required to "maintain a complete set of books and records containing a true and accurate account of the licensee's receipts and disbursements arising out of his activities within the port of New York district" (McKinney's Uncons Laws of NY § 9824 [c]; NJ Stats Ann § 32:23-24 [c]; Regulations of Waterfront Commn. of New York Harbor § 3.9 [21 NYCRR]). The statute and regulations further provide that such books and records must be kept available for Commission inspection.

It is clear that the Commission has broad subpoena power and that its subpoena is deemed valid if the inquiry sought is reasonably related to the purpose for which the Commission was created (*Matter of Scotto v Waterfront Commn.*, 50 NY2d 689; *Matter of Erb Strapping Co. v Waterfront Commn.*, 31 AD2d 101). We have held that the Commission also has the right to subpoena persons over whom it has no licensing or regulatory jurisdiction if it appears that they may have relevant information respecting a matter properly under investigation (*Matter of Parisi v Waterfront Commn.*, 79 AD2d 967, *affd* 53 NY2d 914; *also see, Matter of Standard Fruit & S. S. Co. v Waterfront Commn.*, 43 NY2d 11; *Local 1814 v Waterfront Commn.*, 667 F2d 267).

Worldwide argues that 50% of its business is conducted with firms or individuals not regulated by the Commission. However, it appears that linkage has already been established between Worldwide and various licensed stevedores and persons associated with them. It is also apparent that certain individuals have interest in nonregulated entities with which Worldwide is associated, as well as with regulated companies. The Commission is authorized to investigate such relationships (*Matter of Parisi v Waterfront Commn., supra; Matter of Standard Fruit & S. S. Co. v Waterfront Commn., supra*).

Worldwide's reliance on *Matter of Eastern Indus. Supply Corp. v Waterfront Commn.* (96 AD2d 469) is misplaced. In that case, the subpoena was directed to a company which only had 2 to 5% of its business with licensed firms and individuals. All of its records for three years were sought. In modifying the subpoena in that case we held that it had "not been shown that all the materials sought in this broad and sweeping subpoena are relevant and necessary to the investigation" (96 AD2d, at p 471). The reputation of the petitioner and its principal officer in that case did not satisfy the requisite three-pronged test of authority, relevance and basis for inquisitorial action. However, here there is much more. The interrelationships among the various entities are clear. Moreover, here Worldwide, whose books and records are sought, does at least 50% of its business with licensed companies. Unlike Worldwide, Eastern apparently had no persons associated with it who were also associated with the stevedoring company under investigation. Such is not the case here. Fifty percent of a firm's business is not de minimis.

On Worldwide's cross appeal it contends that the subpoena should be further limited on the ground that there is no need to examine the records of transactions with entities merely "connected to the waterfront" unless they are licensed stevedores or officers, members or shareholders of such licensees. Worldwide proposes that the subpoena be limited to the records set forth in item 13. No such limitation is warranted in view of the relationship already established and the broad power of the Commission to investigate. Concur — Asch, J. P., Bloom, Fein and Kassal, JJ.